# 22-0198

# United States Court of Appeals

*for the*

# Second Circuit

———————◆———————

MARK THOMAS DUBLINO,

*Plaintiff-Appellant,*

— v. —

SGT. JUSTIN BIEGAJ, SGT. ROBERT DEE, DEP. BRIAN THOMPSON,
DEP. FRANK GELSTER, SGT. CROSS, SGT. ROBINSON,
DEPT. P. GIARDINA, DEPT. SHAWN WILSON,

*Defendants-Appellees,*

and

C.O. VINCENT TERRANA,

*Defendant.*

—————————————————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

## BRIEF FOR DEFENDANTS-APPELLEES

ERIE COUNTY DEPARTMENT OF LAW
Erin Molisani, Esq.
*Attorneys for Defendants-Appellees*
95 Franklin Street, Room 1634
Buffalo, New York 14202
(716) 858-2216

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ....................................................................iii

PRELIMINARY STATEMENT .............................................................1

JURISDICTIONAL STATEMENT ........................................................1

STATEMENT OF ISSUES PRESENTED FOR REVIEW ...................2

STATEMENT OF CASE .......................................................................3

SUMMARY OF ARGUMENT ..............................................................9

ARGUMENT ........................................................................................10

    STANDARD OF REVIEW ...............................................................10

    POINT I:  PLAINTIFF DID NOT COMPLY WITH THE PRISON
    LITIGATION REFORM ACT, MAKING THE AMENDED COMPLAINT
    PROPERLY DISMISSED ................................................................10

    POINT II:  THE ARGUMENTS PLAINTIFF RAISES IN HIS APPELLATE
    BRIEF ARE NOT PROPERLY BEFORE THIS COURT ..............13

    POINT III:  THE COURT MAY ALSO OPT TO AFFIRM THE DISTRICT
    COURT ON OTHER BASES FOR WHICH THERE IS SUPPORT IN THE
    RECORD ..........................................................................................14

        A.   The constitutional standard implicated in a post-conviction, pre-
            sentence excessive force claim .............................................14
        B.   Plaintiff's Eighth Amendment rights were not violated .........16
        C.   The claims against defendants in the official capacities .........21
        D.   Certain defendants are entitled to summary judgment for lack of
            personal involvement.............................................................23
            1.   Deputy Thompson ..........................................................25
            2.   Deputy Biegaj ................................................................25
            3.   Sergeant Dee and Deputy Wilson..................................26
            4.   Sergeant Cross ...............................................................27
         E.   Defendants are entitled to qualified immunity ......................27

i

CONCLUSION .................................................................................30

CERTIFICATE OF COMPLIANCE ......................................................31

# TABLE OF AUTHORITIES

Statutes

42 U.S.C. § 1983 ............................................................................... *passim*

42 U.S.C. § 1997 ....................................................................... 10-11

Fed. R. Civ. P. 56 ......................................................................... 10

Caselaw

*5 Borough Pawn, LLC v. City of N.Y.,* 640 F.Supp.2d 268
    (S.D.N.Y. June 22, 2009) ...................................................... 21

*Al-Jundi v. Estate of Rockefeller*, 885 F.2d 1060 (2d Cir. 1989) .................... 23

*Ali v. Szabo,* 81 F.Supp.2d 447 (S.D.N.Y. Jan. 13, 2000) ............................... 15

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986).................................... 10

*Anthony v. City of New York*, 339 F.3d 129 (2d Cir. 2003) .......................... 22

*Ashcroft v. al–Kidd,* 563 U.S. 731 (2011) ........................................................ 28

*Batista v. City of New York*, 2007 WL 2822211 (S.D.N.Y. Sept. 25, 2007).... 22

*Batista v. Rodriguez*, 702 F.2d 383 (2d Cir. 1983)........................................... 22

*Bermudez v. Waugh*, 2013 WL 654401 (N.D.N.Y. Feb. 21, 2013)................. 18

*Berry v. City of Muskogee,* 900 F.2d 1489 (10th Cir. 1990) ........................... 15

*Boddie v. Schnieder*, 105 F.3d 857 (2d Cir. 1997) ......................................... 18

*Brandon v. Holt,* 469 U.S. 464 (1985).............................................................. 21

*Brown v. Doe,* 2 F.3d 1236 (2d Cir. 1993) ................................................. 14-15

*Casiano v. Ashley,* 515 F.Supp.3d 19 (W.D.N.Y. Jan. 28, 2021).................... 29

iii

*Castro v. City of New York*, 2020 WL 6782000 (S.D.N.Y. Nov. 18, 2020) .... 24

*Charles v. Gordon,* 2013 WL 6667632 (S.D.N.Y. Dec. 17, 2013) ................. 11

*Colautti v. Franklin,* 439 U.S. 379 (1979) ........................................................ 14

*Colon v. Coughlin*, 58 F.3d 865 (2d Cir. 1995) ............................................... 24

*Coon v. Town of Springfield,* 404 F.3d 683 (2d Cir. 2005) ............................. 21

*Curry v. City of Syracuse,* 316 F.3d 324 (2d Cir. 2003) ................................. 19

*DeCarlo v. Fry*, 141 F.3d 56 (2d Cir. 1998) .................................................... 22

*Dobbs v. Jackson Women's Health Organization*, 142 S.Ct. 2228 (2022) ...... 14

*Eastman Kodak Co. v. STWB, Inc.,* 452 F.3d 215 (2d Cir. 2006) ................... 13

*Estelle v. Gamble*, 429 U.S. 97 (1976) ........................................................ 16, 18

*Finnegan v. Fountain,* 915 F.2d 817 (2d Cir. 1990) ........................................ 29

*Frederick v. Sheehan*, 2010 WL 11694633 (W.D.N.Y. Oct. 12, 2010) ........... 24

*Hartline v. Gallo,* 546 F.3d 95, 102 (2d. Cir. 2008) ........................................ 28

*Houghton v. Cardone*, 295 F. Supp. 2d 268 (W.D.N.Y. Dec. 3, 2003) .......... 22-23

*Hudson v. McMillian,* 503 U.S. 1 (1992) ...................................................... 16, 18

*Hunter v. Bryant,* 502 U.S. 224, 229 (1981) .................................................... 28

*James v. Phillips*, 2008 WL 1700125 (S.D.N.Y. Apr. 9, 2008) ....................... 18

*Jeanty v. County of Orange*, 379 F.Supp.2d 533 (S.D.N.Y. July 27, 2005) .... 15

*Jenkins v. City of New York*, 478 F.3d 76 (2d Cir. 2007) ................................ 22

*Johnson v. Glick,* 481 F.2d 1028 (2d Cir. 1973) .............................................. 18

iv

*Johnson v. Rowley,* 569 F.3d 40 (2d Cir. 2009)................................................. 10

*Lennon v. Miller*, 66 F.3d 416 (2d Cir. 1995).................................................... 28

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986).................................................................................. 10

*McCoy v. Goord*, 255 F.Supp.2d 233 (S.D.N.Y. Mar. 25, 2003)..................... 11

*McCrory v. Belden,* 2003 WL 22271192 (S.D.N.Y. Sept. 30, 2003)............... 17

*McKinnon v. Patterson*, 568 F.2d 930 (2d Cir. 1977)
    *cert. denied*, 434 U.S. 1087 (1978) ........................................................ 23

*Mobayed v. Pastina,* 1996 WL 741744 (S.D.N.Y. Dec. 27, 1996) ................. 15

*Moffitt v. Town of Brookfield*, 950 F.2d 880 (2d Cir. 1991)............................ 23

*Monell v. Dep't. of Soc. Servs.,* 436 U.S. 658 (1978)...................................... 22

*Porter v. Nussle,* 534 U.S. 516 (2002)............................................................. 11

*Reichle v. Howards*, 566 U.S. 658 (2012) ........................................................ 28

*Robinson v. Henschel*, 2014 WL 1257287 (S.D.N.Y. Mar. 26, 2014)............ 18-19

*Romano v. Howarth,* 998 F.2d 101 (2d Cir. 1993) ........................................... 16

*Rosales v. Fischer,* 2009 WL 928260 (S.D.N.Y. Mar. 31, 2009) .................... 18

*Ross v. Blake,* 578 U.S. 632 (2016) ................................................................. 11

*Saeli v. Chautauqua County, NY,* 36 F.4th 445 (2d Cir. 2022) ....................... 10

*Santos v. New York City Dept. of Correction*,
    2010 WL 1142066 (S.D.N.Y. Feb. 25, 2010) ........................................ 16

*Sims v. Artuz,* 230 F.3d 14 (2d Cir. 2000) ....................................................... 17

*Sorlucco v. New York City Police Department,*
    971 F.2d 864 (2d Cir. 1992) .................................................................. 22

*Taylor v. N.Y. Dep't of Corr.,* 2012 WL 2469856
    (S.D.N.Y. June 27, 2012) ....................................................................... 19

*Terebesi v. Torreso,* 764 F.3d 217 (2d Cir. 2014) ........................................... 28

*Viacom Int'l, Inc. v. Icahn,* 946 F.2d 998 (2d Cir. 1991) ................................. 14

*Vogelfang v. Capra,* 889 F.Supp.2d 489 (S.D.N.Y. Mar. 13, 2012) ............... 19

*Whitley v. Albers,* 475 U.S. 312 (1986) ...........................................14-15, 17, 19

*Zahra v. Town of Southold,* 48 F.3d 674 (2d Cir. 1995) .............................. 22

*Zalaski v. City of Hartford,* 723 F.3d 382 (2d Cir. 2013) ................................. 28

## **PRELIMINARY STATEMENT**

Defendants-appellees Sgt. Justin Biegaj, Sgt. Robert Dee, Dep. Brian Thompson, Dep. Frank Gelster, Sgt. Cross, Sgt. Robinson, Dep. Shawn Wilson, and Dep. P. Giardina (hereinafter "defendants") respectfully submit this Reply Brief in opposition to plaintiff-appellant's (hereinafter "plaintiff") appeal seeking reversal of the District Court's dismissal of plaintiff's Complaint. As explained below, the District Court correctly granted defendants summary judgment, where plaintiff did not grieve the alleged excessive use of force. Moreover, there is support in the record to grant summary judgment on alternative bases as well. Accordingly, defendants ask that the District Court's decision be affirmed.

## **JURISDICTIONAL STATEMENT**

Plaintiff in this action asserted claims pursuant to 42 U.S.C. § 1983. Accordingly, subject-matter jurisdiction exists pursuant to 28 U.S.C. §§ 1331 and 1343. This Court has jurisdiction to hear plaintiff's appeal pursuant to 28 U.S.C. § 1291, as the decision being appealed is a final order and judgment dismissing the Amended Complaint. The Notice of Appeal regarding the January 18, 2022 Decision and Order was timely filed on January 31, 2022.

## <u>STATEMENT OF ISSUES PRESENTED FOR REVIEW</u>

1.     Were defendants entitled to summary judgment where plaintiff did not grieve the alleged excessive force as required?

2.     Are plaintiff's appellate arguments preserved when they were not raised to the District Court or even contained in the Amended Complaint?

3.     Is summary judgment appropriate where there was no Eighth Amendment violation?

4.     Are defendants entitled to summary judgment in their official capacities when there is no allegation of a custom or policy?

5.     Are defendants who were not personally involved in the claimed civil rights violation entitled to summary judgment?

6.     Are defendants entitled to qualified immunity?

## STATEMENT OF CASE

The incident which is the subject of this lawsuit occurred on March 9, 2018 at 10:20 a.m. (SA-55). As of that date, plaintiff Mark Dublino was incarcerated at the Erie County Holding Facility (SA-55). He had recently been convicted of several crimes, and was meeting with his criminal defense attorney, Joe Terranova, in the attorney conference room of the jail (SA-58). He and his attorney were involved in a physical confrontation (SA-64 – SA-65). Ultimately, plaintiff was convicted of assault in a correctional facility for assaulting his attorney (SA-52 – SA-53).

As a result of the assault on his attorney, an emergency "10-99 call" was issued, and several deputies responded (SA-123). A 10-99 call requires available deputies to respond to the location of the 10-99 (SA-123). Deputy Thompson heard the 10-99 call and responded with his K-9, whom he had just let out (SA-124). He observed Mr. Terranova with visible injuries to his face, who stated that plaintiff had just assaulted him (SA-125). Mr. Terranova was in "pretty rough shape" and was bleeding from his face near his eyes (SA-306 – SA-307).

Deputy Thompson ordered plaintiff to lay face down on the ground (SA-126). Deputy Thompson applied pressure to plaintiff's back until the response team arrived (SA-126). Deputy Thompson used force on plaintiff because it appeared an assault on Mr. Terranova had occurred and he was trying to prevent something else from happening (SA-130). Deputy Thompson held plaintiff down because he knew

a response team was coming, and he had only one hand, as his other hand was holding the dog's leash (SA-130 – SA-131). When asked if defendant Thompson used force against him, plaintiff testified that defendant Thompson lost control of the dog and the dog bit his right hand (SA-67). Plaintiff does not claim that the dog was not instructed to bite plaintiff (SA-71).

Plaintiff testified that defendant Biegaj went down on his knee on plaintiff's back (SA-73). Sergeant Biegaj went from a standing to a kneeling position to attempt to gain control of plaintiff's left hand, and in doing so, struck his right knee on the ground (SA-303). Plaintiff was not complying with Sergeant Biegaj when instructed to place his hands behind his back (SA-310). Sergeant Biegaj did not stomp or step on plaintiff (SA-313; SA-353).

In the Amended Complaint, plaintiff alleges that Sergeant Dee and Deputy Wilson grabbed plaintiff's arms and hands and bent and twisted them in an abnormal position with extreme pressure (SA-13). Upon questioning, plaintiff testified that Sergeant Dee and Deputy Wilson took longer than plaintiff thought it should to handcuff him (SA-75 – SA-76). There is no typical amount of time it takes to handcuff someone, especially in an emergency situation or if someone is resisting (SA-166; SA-218; SA-287). Plaintiff used a process of elimination by watching the video of this encounter to determine who must have been handcuffing him based on who was in the camera and then off the camera (SA-80 – SA-81; SA-106). When

asked about the bending his arms in abnormal positions, he testified that he was handcuffed with his palms facing outward, and then the handcuffs were removed and his hands turned inward toward his body (SA-76 – SA-78).

Defendant Gelster took control of plaintiff's right arm because plaintiff would not voluntarily put his hands behind his back (SA-161). Deputy Gelster used force on plaintiff because he was not complying with orders (SA-162).

Plaintiff is "almost very, very certain" that Sergeant Robinson instructed plaintiff's handcuffs be removed and reapplied (SA-79). Plaintiff does not know who removed the handcuffs and put them on the other way (SA-79). In an emergency situation or when an inmate is resisting, an inmate may be handcuffed with his hands facing inward (rather than outward from the body) (SA-162; SA-283). Neither Sergeant Dee nor Deputy Wilson grabbed plaintiff's arms and hands and bent and twisted them in an abnormal position with extreme pressure (SA-325).

Plaintiff alleges defendant Cross was stomping on plaintiff's feet based on seeing him rocking back and forth in the video (SA-82; SA-106). Sergeant Cross did not stomp on plaintiff (SA-288; SA-326; SA-382). Sergeant Cross' only physical contact with plaintiff was to guide him with his hand as plaintiff was being escorted (SA-345).

Plaintiff testified that he heard Sergeant Robinson say "wrench him" throughout the corridors and in the infirmary (SA-85). Plaintiff claims that

defendants Gelster and Giardina wrenched him (SA-86 – SA-87). Deputy Gelster did not recall anyone stomping, hitting, punching, or anything similar (SA-171 –SA-172).

Sergeant Robinson did not touch plaintiff (SA-210). Sergeant Robinson did not order anyone to "wrench" plaintiff (SA-211; SA-219; SA-248; SA-326 – SA-327). Deputies Gelster and Giardina did not wrench plaintiff's arms (SA-326; SA-356).

Plaintiff was already handcuffed by the time Deputy Giardina responded to the scene (SA-243). Plaintiff was resisting Deputy Wilson as he attempted to handcuff him (SA-270 – SA-271; SA-280; SA-351).

Plaintiff was escorted to medical after the incident because any inmate who is involved in any sort of altercation is evaluated by medical immediately after (SA-349). Plaintiff was examined by RN Grace Moka on March 9, 2018 at 11:27 a.m., with non-specific complaints of pain, he was able to wiggle his fingers and raise his arms, and there was no active bleeding noted (CA-7 – CA-8). An assessment performed on March 9, 2018 at 7:52 p.m. showed plaintiff was complaining of pain to both hands (CA-23 – CA-24). That assessment showed swelling and redness to his hands and no physical signs of injury to his back, sides, or chest. Plaintiff offered no other complaints (CA-23 – CA-24).

Plaintiff refused medical care the day after the assault (CA-29). An assessment

performed on March 12, 2018 showed no signs of injury to his right lower back or ribs (CA-46 – CA-47).

In March 2018, plaintiff was aware of the grievance process (SA-102). Plaintiff was asked if he filed a grievance relative to this incident and he stated that "they would never give me a grievance form" (SA-101). Plaintiff testified that in the two weeks after this incident but before he was transferred to another facility, "they" would not give him a grievance form to file a grievance for any other issue (SA-102). Plaintiff admitted to the genuineness of Exhibit A to defendants' Notice to Admit (SA-388 – SA-396). Plaintiff admitted to filing a grievance on March 11, 2018 relating to issues with mail and postage (SA-394). Plaintiff admitted that as of March 11, 2018, the grievance process was available, but claims it was only available for the issue grieved in Exhibit A of defendants' Notice to Admit (SA-395).

Plaintiff commenced the instant lawsuit in the United States District Court, Western District of New York (SA-10 – SA-13. Plaintiff's Amended Complaint claims constitutional violations in the form of excessive force for defendants' response to plaintiff assaulting his attorney (SA-13).

Following completion of discovery, defendants moved for summary judgment (SA-38). The District Court granted defendants' motion, finding that the grievance

process was available to plaintiff, and he did not grieve the alleged excessive force, thereby barring his claim (SA-416 – SA-421).

Plaintiff filed a Notice of Appeal (SA-423).

## SUMMARY OF ARGUMENT

The District Court's decision should be affirmed where a de novo review shows that the grievance process was available to plaintiff and he did not make use of it. Plaintiff did not grieve the alleged excessive use of force for the deputies' response to plaintiff assaulting his attorney. Plaintiff submitted nothing to the District Court, or to this Court, to create a triable issue of fact on that issue. Accordingly, the decision of the District Court should be affirmed.

The arguments plaintiff offers in his Appellant's brief do nothing to point to any question of fact on any issue in controversy. Instead, he makes myriad arguments on constitutional issues not contained within his Amended Complaint and therefore not properly before this Court.

Additionally, defendants offer arguments made to the District Court which it did not address or adopt, because there is support in the record to grant summary judgment on those bases as well. Specifically, there was no Eighth Amendment violation. The claims against defendants in their official capacities are subject to summary judgment as there is neither any allegation nor evidence of a custom or policy sufficient to sustain a claim, while certain defendants are entitled to summary judgment in their individual capacities for lack of personal involvement. Last, there is support in the record to find that defendants are entitled to qualified immunity.

**ARGUMENT**

**STANDARD OF REVIEW**

The Court reviews "*de novo* a district court's ruling on whether a plaintiff has exhausted administrative remedies under the Prison Litigation Reform Act of 1995." *Johnson v. Rowley,* 569 F.3d 40, 44 (2d Cir. 2009). Where, as here, the district court's decision came after a motion for summary judgment, the review of the record is made in the light most favorable to the nonmoving party and should affirm only when there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); *see Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251-52 (1986).

In opposing defendants' summary judgment motion, plaintiff "must do more than simply show that there is some metaphysical doubt as to the material facts." *Saeli v. Chautauqua County, NY,* 36 F.4th 445, 455 (2d Cir. 2022) *quoting Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

**POINT I**

**PLAINTIFF DID NOT COMPLY WITH THE PRISON LITIGATION REFORM ACT, MAKING THE AMENDED COMPLAINT PROPERLY DISMISSED**

The Prison Litigation Reform Act ("PLRA") provides that:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or

10

other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). This "exhaustion requirement applies to 'all prisoners seeking redress for any prison circumstances or occurrences,' whether it was a particular episode or an ongoing circumstance." *Charles v. Gordon,* 2013 WL 6667632, at *3 (S.D.N.Y. Dec. 17, 2013) *quoting Porter v. Nussle, 5*34 U.S. 516, 520 (2002).

In evaluating whether administrative remedies were available to a plaintiff, one consideration is prior grievances filed by the plaintiff: "the inmate grievance program was available to [the plaintiff] ... for he filed a number of grievances concerning some of the misconduct he alleges." *McCoy v. Goord*, 255 F.Supp.2d 233, 254 (S.D.N.Y. Mar. 25, 2003)(internal punctuation omitted)(holding that the plaintiff could not contest the availability of administrative remedies where he had partially grieved the incident).

The Supreme Court in *Ross v. Blake,* 578 U.S. 632, 643 (2016) set out "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* Second, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." *Id*. at 643-44. Finally, "the same is true when prison administrators thwart inmates from

11

taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 644.

Here, plaintiff did not file a grievance related to the subject interaction with the deputies, allegedly because he did not have a grievance form or a pen (SA-101 – SA-102). But this allegation is belied by plaintiff's admission that he filed a grievance related to a separate mail-related issue two days after the subject incident (Exhibits SA-388 – SA-396). This unrelated grievance was sent on March 11, 2018, from plaintiff's keeplock cell and concerned mail and postage (SA-394 – SA-395). Other evidence that plaintiff himself submitted shows that he *did* have a pen (CA-29; CA-41; CA-104, SA-391). This demonstrates that the process was, indeed, available to plaintiff. Plaintiff failed to offer anything other than conclusory assertions that the grievance process was somehow available for one issue, but not the subject claimed excessive force. The District Court properly rejected this argument in light of the clear evidence showing that plaintiff submitted a grievance for an unrelated issue just two days after the incident in question, therefore making the process available. Plaintiff's Amended Complaint was properly dismissed.

**POINT II**

**THE ARGUMENTS PLAINTIFF RAISES IN HIS APPELLATE BRIEF ARE NOT PROPERLY BEFORE THIS COURT**

Arguments raised for the first time on appeal are deemed waived. *Eastman Kodak Co. v. STWB, Inc.,* 452 F.3d 215, 221 (2d Cir. 2006)("[T]his court ordinarily will not hear arguments not made to the district court.").

In his appellate brief, plaintiff focuses on his perceived lack of due process, an issue not before this Court. The Amended Complaint concerns the alleged excessive use of force under the Fifth and Fourteenth Amendments (SA-13). The Amended Complaint contains nothing concerning due process of the disciplinary report issued after he assaulted his attorney, as plaintiff argues at Argument One of his brief (Doc. No. 54, p. 6). Nor is there an issue of "due process for medical attention," or concerning whether he followed orders from the officers, as plaintiff sets out in Arguments Two and Three, respectively, of his brief (Doc. No. 54, pp. 6-7). Argument Four of plaintiff's brief similarly does not address the fact that he did not make use of the available grievance process (Doc. No. 54, p. 7). Accordingly, defendants ask that these arguments be disregarded as irrelevant to the instant appeal.

13

**POINT III**

**THE COURT MAY ALSO OPT TO AFFIRM THE DISTRICT COURT ON OTHER BASES FOR WHICH THERE IS SUPPORT IN THE RECORD**

Should the Court disagree with the rationale the District Court relied upon in granting summary judgment to defendants, it is respectfully submitted that the Court may affirm on any ground for which there is support in the record, even if not adopted by the District Court. *See Colautti v. Franklin,* 439 U.S. 379, 397 n. 16 (1979) *abrogated on other grounds by Dobbs v. Jackson Women's Health Organization*, 142 S.Ct. 2228 (2022)("Appellees, as the prevailing parties, may of course assert any ground in support of that judgment, whether or not that ground was relied upon or even considered by the trial court.")(internal quotation omitted); *Viacom Int'l, Inc. v. Icahn,* 946 F.2d 998, 1000 (2d Cir. 1991). Accordingly, although the District Court did not address the additional bases upon which defendants based their motion for summary judgment, it is respectfully submitted that there is sufficient support in the record for this Court to alternatively grant summary judgment for the reasons that follow below.

**A.** ***The constitutional standard implicated in a post-conviction, pre-sentence excessive force claim***

The Eighth Amendment is the "primary source of substantive protection to convicted prisoners ..., where the deliberate use of force is challenged as excessive and unjustified." *Whitley v. Albers,* 475 U.S. 312, 327 (1986); *see also Brown v.*

14

*Doe,* 2 F.3d 1236, 1242 (2d Cir. 1993); *Ali v. Szabo,* 81 F.Supp.2d 447, 454 n. 6 (S.D.N.Y. Jan. 13, 2000). Numerous courts have held that a convicted plaintiff's excessive force claim, even if the plaintiff has not yet been sentenced, is governed by the Eighth Amendment. *See Mobayed v. Pastina,* 1996 WL 741744, at *4 (S.D.N.Y. Dec. 27, 1996)(collecting cases); *see also Berry v. City of Muskogee,* 900 F.2d 1489, 1493 (10th Cir. 1990)(concluding that there is "no reason to treat incarcerated persons whose guilt has been adjudicated formally but who await sentencing like pretrial detainees, who are detained primarily to ensure their presence at trial and who cannot be punished" and that there is "every reason to treat those awaiting sentencing the same as inmates already sentenced")(citations omitted); *Jeanty v. County of Orange*, 379 F.Supp.2d 533, 59 (S.D.N.Y. July 27, 2005)("plaintiff's excessive force claim, which arose after he was convicted but before he was sentenced, is to be analyzed under the Eighth Amendment.").

Here, plaintiff's Amended Complaint states that his cause of action is grounded in the Fifth and Fourteenth Amendments (SA-13). As of March 9, 2018, plaintiff had been convicted of a crime for which he was incarcerated (SA-58). Despite plaintiff's identification of the Fifth and Fourteenth Amendments as the basis for his claim, defendants respectfully submit that under the authority cited above, the proper analysis is under the Eighth Amendment. Under that standard, summary judgment is proper.

**B.      *Plaintiff's Eighth Amendment rights were not violated***

The Eighth Amendment protects prisoners from "cruel and unusual punishment" in the form of "unnecessary and wanton infliction of pain" at the hands of prison officials. *Romano v. Howarth,* 998 F.2d 101, 104 (2d Cir. 1993) *citing Wilson,* 501 U.S. 294, 297 (1991) and *Estelle v. Gamble,* 429 U.S. 97, 104 (1976). For a claim that prison officials used excessive force under the Eighth Amendment, "the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 7 (1992). The particular objective and subjective standard to be applied "depends upon the constraints facing the official." *Wilson,* 501 U.S. at 303. "Courts recognize that prison officials responding to a riot or other emergency must balance the need to maintain prison safety and security against the need to be restrained in their use of force." *Santos v. New York City Dept. of Correction*, 2010 WL 1142066 , at *4 (S.D.N.Y. Feb. 25, 2010). Thus, in excessive-force claims, the inquiry focuses on whether the charged official used force in a good-faith attempt to maintain order, or maliciously and sadistically to cause harm. *Wilson, supra.* at 302.

To successfully establish an Eighth Amendment excessive force claim, plaintiff must sufficiently prove two components: (1) a subjective component which focuses on the defendant's motive for his conduct; and (2) an objective component

16

which focuses on the conduct's effect. *See Sims v. Artuz,* 230 F.3d 14, 20 (2d Cir. 2000).

As to the subjective component, the defendant must have acted with "a sufficiently culpable state of mind," meaning that he acted in a "wanton manner in light of the particular circumstances surrounding the challenged conduct." *McCrory v. Belden,* 2003 WL 22271192, at *5 (S.D.N.Y. Sept. 30, 2003) (internal quotation marks omitted). Considerations include the extent of the plaintiff's injuries, the need for the application of force, the correlation between the need for force and the amount of force used, the threat reasonably perceived by the defendants, and any efforts made by the defendants to temper the severity of a forceful response. *Whitley,* 475 U.S. at 321. As stated by the Second Circuit*:*

> If an evaluation of these factors leads the [trier of fact] to conclude that the defendants acted maliciously, wantonness has been established. And an Eighth Amendment violation has occurred. If, on the other hand, reflection upon these factors leads the [trier of fact] to find that the defendants acted in a good-faith effort to maintain and restore discipline, no constitutional violation has occurred because the subjective component of the claim has not been satisfied.

*Romano*, 998 F.2d at 105.

Objectively, a plaintiff must establish that the deprivation alleged is sufficiently serious or harmful enough to reach constitutional dimensions. *Id.; see also Wilson, supra.* This component is "contextual and responsive to contemporary standards of decency." *Hudson,* 503 U.S. at 2, *quoting Estelle,* 429 U.S. at 103. The

objective prong must be met with a showing that the harm was more than *de minimis.* *Rosales v. Fischer,* 2009 WL 928260, at *24 (S.D.N.Y. Mar. 31, 2009). Certainly not "every malevolent touch by a prison guard gives rise to a federal cause of action," *Hudson,* 503 U.S. at 9, and "not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights." *Johnson v. Glick,* 481 F.2d 1028, 1033 (2d Cir. 1973).

*De minimus* force does not satisfy the objective element of an Eighth Amendment claim, and courts have granted summary judgment in favor of defendants. *See, e.g., Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997)(holding that inmate's claims that he was "bumped, grabbed, elbowed, and pushed" by prison officials insufficient to state Eighth Amendment claim); *Bermudez v. Waugh*, 2013 WL 654401, at *5 (N.D.N.Y. Feb. 21, 2013)(finding that tackling of inmate that caused minor bruising constituted *de minimus* force); *James v. Phillips*, 2008 WL 1700125, at *4-5 (S.D.N.Y. Apr. 9, 2008)(finding *de minimus* use of force when prison guard shoved inmate into cell door, causing swelling of the inmate's chin); *Robinson v. Henschel*, 2014 WL 1257287, at *7 (S.D.N.Y. Mar. 26, 2014)(plaintiff's hand was slammed repeatedly against the wall) *citing Taylor v. N.Y. Dep't of Corr.*, 2012 WL 2469856, at *5 (S.D.N.Y. June 27, 2012)(corrections officer forced inmate's face into the wall). In cases where the defendants applied "only a degree of roughness that is common in prison contexts," and plaintiff has

"not claimed a lasting or even fleeting injury resulting from the defendant's conduct, courts in this circuit have routinely held that such conduct is insufficiently serious to support an Eighth Amendment claim." *Robinson, supra quoting Vogelfang v. Capra*, 889 F.Supp.2d 489, 507 (S.D.N.Y. Mar. 13, 2012).

Here, the proof does not establish either the objective or subjective components. Regarding the subjective component, defendants' use of force against plaintiff was in response to plaintiff's assault on his attorney. To the extent plaintiff may claim he did not assault his attorney and was defending himself, he is collaterally estopped from denying he is guilty of assault by virtue of the criminal conviction of assault. *Curry v. City of Syracuse,* 316 F.3d 324, 332 (2d Cir. 2003)("Collateral estoppel prevents a party from relitigating an issue decided against that party in a prior adjudication."). In either case, whether justified or not, there was an altercation between plaintiff and a civilian and the deputies were attempting to restore order.

Applying the factors enunciated by *Whitley, supra,* force was justified in light of the legitimate security threat that this altercation presented. The force used was in direct correlation to the threat reasonably perceived by the defendants—specifically, a civilian in "pretty rough shape," who stated that plaintiff had just assaulted him (SA-306 – SA-307; SA-125). Defendants gave plaintiff instructions to put his hands behind his back before force was used (SA-161 – SA-162). Plaintiff continued to

resist efforts to subdue him (SA-270 – SA-271; SA-280). Specific to Deputy Thompson and the claim that the force he used was excessive because he already had control of plaintiff, this theory is unavailing. Despite plaintiff's testimony that Deputy Thompson could have "called the dogs off," (SA-72), the testimony shows that Deputy Thompson did not carry handcuffs and did not have the authority to clear the scene (SA-129; SA-133). The force he did use in holding plaintiff down until backup arrived was appropriate under the circumstances. The other allegations plaintiff has alluded to in his testimony—such as it taking longer than he thought it should to apply handcuffs and that the handcuffs were removed and reapplied with his hands facing inward—are without support. Not only is "reverse cuffing" sometimes necessary in an emergency situation or when someone is resisting (SA-24), but there appears to be no caselaw to suggest this constitutes excessive force. All told, plaintiff has not and cannot make out the subjective component of an Eighth Amendment claim.

Similarly, proof supporting the objective component is lacking. There is no medical proof of anything beyond *de minimus* injuries (which are more likely related to having just assaulted his attorney). Plaintiff's certified medical records demonstrate non-specific complaints of pain (CA-7 – CA-8). An assessment performed the day of the incident showed swelling and redness to his hands; no physical signs of injury to his back, sides, or chest; and no other complaints (CA-23

20

– CA-24). He later refused medical care (CA-29). An assessment performed three days after plaintiff assaulted his attorney showed, again, no signs of injury to his right lower back or ribs (CA-46 – CA-47). Although x-rays were ordered after that assessment, he refused them (Ca-77). While *de minimus* injuries may still qualify as noted above, without the malicious and sadistic mindset on the part of the deputies, this prong still is not met.

There was undeniably a security threat at the Erie County Holding Center after plaintiff assaulted his attorney. The record is clear that defendants used appropriate force to subdue the threat. Accordingly, defendants respectfully ask for a finding from this Court that plaintiff's Eighth Amendment violation fails.

### C. *The claims against defendants in their official capacities are subject to summary judgment*

"[A] § 1983 suit against a municipal officer in his official capacity is treated as an action against the municipality itself." *Coon v. Town of Springfield*, 404 F.3d 683, 687 (2d Cir. 2005) *citing Brandon v. Holt*, 469 U.S. 464, 471-73 (1985); *see also 5 Borough Pawn, LLC v. City of N.Y.*, 640 F.Supp.2d 268, 297 (S.D.N.Y. 2009)("A suit for damages against a municipal officer in their official capacity is the equivalent of a damage suit against the municipality itself."). In order to maintain a § 1983 action against a municipal defendant, a plaintiff must identify a municipal policy or custom from which the alleged injury arose. *Monell v. Dep't. of Soc. Servs.*, 436 U.S. 658, 694-95 (1978). A plaintiff asserting a claim like the one here "is

21

required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right.'" *Zahra v. Town of Southold*, 48 F.3d 674, 685 (2d Cir. 1995) *quoting Batista v. Rodriguez*, 702 F.2d 383, 397 (2d Cir. 1983).

To show a policy, custom, or practice, the plaintiff need not identify an express rule or regulation. *See, e.g., Sorlucco v. New York City Police Department,* 971 F.2d 864, 870 (2d Cir. 1992). "[A] municipality may be found liable under section 1983 only where the municipality itself causes the constitutional violation at issue." *Jenkins v. City of New York*, 478 F.3d 76, 93-94 (2d Cir. 2007) *citing Monell, supra*. Specifically, the harm must result from an action that implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers' or is conducted pursuant to governmental custom even though such a custom has not received formal approval through the body's official decision-making channels. *Anthony v. City of New York*, 339 F.3d 129, 139 (2d Cir. 2003) *quoting Monell*, *supra* at 690-91.

Moreover, "a single incident alleged in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy." *Houghton v. Cardone*, 295 F. Supp. 2d 268, 279 (W.D.N.Y. Dec. 3, 2003) *quoting DeCarlo v. Fry*, 141 F.3d 56, 61 (2d Cir. 1998); *see also Batista v. City of New York*, 2007 WL 2822211, at *14 (S.D.N.Y. Sept. 25, 2007)(dismissing

plaintiff's § 1983 claim, "because rather than identify a municipal policy maintained by [defendant] which results in [constitutional violations], [plaintiff] has only pled a particular instance of alleged misconduct by low-ranking police officers, which alone is insufficient to state a claim").

Here, plaintiff's civil rights claim against defendants in their official capacities is subject to dismissal. Plaintiff's Amended Complaint at no point asserts the existence of a policy or custom giving rise to the alleged constitutional violation. At best, any constitutional violation represents an isolated incident by actors below the policy-making level. This is insufficient. Where, as here, plaintiff has not alleged and cannot establish a custom or policy of constitutional violations, defendants are entitled to judgment as a matter of law.

### D. Certain defendants are entitled to summary judgment for lack of personal involvement

"In this Circuit personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Moffitt v. Town of Brookfield*, 950 F.2d 880, 886 (2d Cir. 1991) *citing McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977), *cert. denied*, 434 U.S. 1087 (1978); *Al-Jundi v. Estate of Rockefeller*, 885 F.2d 1060, 1065-66 (2d Cir. 1989). The Second Circuit has laid out the criteria to consider for personal involvement:

> The personal involvement of a supervisory defendant may be shown by evidence that: (1) the defendant participated directly in the alleged constitutional violation, (2) the

defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995)(internal quotations and citations omitted). A plaintiff who names individual defendants, but fails to specify who did what among them, subjects the case to dismissal. *Frederick v. Sheehan*, 2010 WL 11694633, *2 (W.D.N.Y. Oct. 12, 2010)("Plaintiff has failed to identify who did what to him. Plaintiff has named specific individuals in the caption and defendants sections of his complaint, but alleges only that 'officers' pushed him inside his cell and assaulted him. Plaintiff has failed to identify who was personally involved in the violations he claims."). A plaintiff who is unable to ascribe certain acts of force against individual defendants subjects his claim to summary judgment. *Castro v. City of New York*, 2020 WL 6782000 (S.D.N.Y. Nov. 18, 2020)*("*When viewed in the context of the above-cited testimony, Plaintiff's vague allegation that 'all of [the Defendants] were involved,' […] fails to create a genuine dispute as to whether Defendants used excessive force against Plaintiff.")

Plaintiff here is unable to establish personal involvement for certain defendants. He either relies on speculation in an attempt to make out his claim, or

the defendant was not personally involved at all.

### 1. *Deputy Thompson*

Plaintiff's Amended Complaint alleges that:

> Deputy Brian Thompson grabbed plaintiff Mark Dublino as he exited an attorney conference room (plaintiff left the room on his own free will) Deputy Thompson reacted to a remark made by plaintiffs [sic] attorney "kick his f_cking ass" (explicit slang directness) Deputy Thompson ordered plaintiff to the ground; plaintiff followed this order; Then ordered the plaintiff to lie face down on the floor as he began to place handcuffs on the plaintiff; he lost control of the leashed dog which began to bite the plaintiffs [sic] legs.

(SA-13). Plaintiff does not claim that the dog was instructed to bite him (SA-71). Based on the allegations in the Amended Complaint, Deputy Thompson was not personally involved in the use of force as it concerns the dog allegedly biting plaintiff.

### 2. *Deputy Biegaj*

Plaintiff testified that Deputy Biegaj was the next officer on the scene after Deputy Thompson and claims he went down on his knees on plaintiff's back (SA-73). Plaintiff was facedown when this occurred (SA-74). He was relying on the video in claiming that Deputy Biegaj did this (SA-74; SA-106). Deputy Biegaj did not do as plaintiff speculates, and instead struck his knee on the ground (SA-303; SA-313; SA-353). The claim against him should be dismissed for lack of personal involvement.

### 3. *Sergeant Dee and Deputy Wilson*

As to these defendants, plaintiff alleges that:

Sergeant Robert Dee and Shawn Wilson then grabbed plaintiffs [sic] arms and hands bending and twisting them in abnormal positions with extreme pressure.

(SA-13). But in his deposition, plaintiff was unable to state under oath what exactly these defendants did. Instead, he admitted he was relying on the video in formulating his claims against these defendants (SA-81 – SA-82). He was asked and answered:

Q:   Okay, can you break it down for me between [Sergeant Dee and Deputy Wilson], who did what?

A.   I was facedown. They were -- they were part of the report, the report that I read for the disturbance. They were saying that they were grabbing my arms. Only takes about, if you're in a prone position and your hands are behind the back, you only need to put the handcuffs on, it takes about five seconds to put the handcuffs on you and then pick you up. I was down on the ground for a minute, 20 seconds facing down.

(SA-75 – SA-76). Plaintiff went on to describe his hands being handcuffed with the palms facing outward, and then having the handcuffs removed and reapplied with his palms facing inward toward his body while deputies were on his back (SA-76 – SA-77). He was asked and answered as follows:

Q:   And so who took the cuffs off and put them on the opposite way?

A:   I don't know, my face was facedown. I don't know.

Q:   Well, what I am trying to get at is, what the claims against Shawn Wilson and Sergeant Dee are, and you have described bending and twisting your arms in an abnormal fashion in the complaint, and so I want to get the information about what the claims are against those two individuals?

26

A:     I just said. I just said, I'm in a prone position for a minute and 20 seconds. It takes five to ten seconds at the most to put handcuffs on, okay, and if that's the case, then what were you doing for a minute and 20 seconds while -- while the defendant is defenseless. While the, excuse me, the plaintiff is defenseless. Myself as being the plaintiff. Defenseless and they're putting the cuffs on and taking them off and they're bending the arms back. That's all I can tell you.

(SA-79 – SA-80). Plaintiff admits that he was relying the video in stating who handcuffed him (SA-81; SA-106). Plaintiff is unable to affirmatively state that the alleged bending and twisting of arms was at the hands of Sergeant Dee or Deputy Wilson. These claims must fail.

### 4.    *Sergeant Cross*

Plaintiff's Amended Complaint states:

> Sergeant Cross standing directly over plaintiff began stomping and stepping on plaintiff's lower extremities legs; ankles & Feet; while plaintiff was lying on the floor

(SA-13). Upon questioning, plaintiff admitted that he alleged Sergeant Cross was stomping on his legs and feet based on seeing him rocking in the video (SA-82; SA-106). Sergeant Cross did not stomp on plaintiff (SA-288; SA-326; SA-382). The claim against Sergeant Cross should be dismissed.

### E.    *Defendants are entitled to qualified immunity*

"Qualified immunity shields government officials from liability for civil damages as a result of their performance of discretionary functions, and serves to protect government officials from the burdens of costly, but insubstantial, lawsuits."

27

*Lennon v. Miller*, 66 F.3d 416, 420 (2d Cir. 1995). Qualified immunity provides a broad shield and a deliberately forgiving standard of review. *Zalaski v. City of Hartford*, 723 F.3d 382, 389 (2d Cir. 2013). Officials are entitled to qualified immunity when "their decision was reasonable, even if mistaken" and the doctrine "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Hunter v. Bryant*, 502 U.S. 224, 229 (1991).

"A police officer is entitled to qualified immunity if (1) his conduct does not violate a clearly established constitutional right, or (2) it was 'objectively reasonable' for the officer to believe his conduct did not violate a clearly established constitutional right." *Hartline v. Gallo*, 546 F.3d 95, 102 (2d. Cir. 2008); *see also Reichle v. Howards*, 566 U.S. 658 (2012). Official conduct violates clearly established law "when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Terebesi v. Torreso*, 764 F.3d 217, 230 (2d Cir. 2014)(internal punctuation omitted) *quoting Ashcroft v. al–Kidd,* 563 U.S. 731 (2011). The "objective reasonableness test is met—and the defendant is entitled to immunity if 'officers of reasonable competence could disagree' on the legality of the defendant's actions." *Id.* (citation omitted).

"A defendant is entitled to summary judgment on qualified immunity grounds when no reasonable jury, looking at the evidence in the light most favorable to, the plaintiff, could conclude that it was objectively unreasonable for the defendant to believe that he was acting in a fashion that did not clearly violate an established federally protected right." *Casiano v. Ashley*, 515 F.Supp.3d 19, 27 (W.D.N.Y. Jan. 28, 2021)(internal punctuation omitted). Provided that no factual issues are disputed, the application of qualified immunity to the facts is a question of law for the court to decide. *Finnegan v. Fountain,* 915 F.2d 817, 821 (2d Cir. 1990).

Here, defendants are entitled to qualified immunity. Defendants respectfully submit that they had no reason to believe that they were in violation of plaintiff's constitutional rights by using *de minimus* force to restore control and peace after plaintiff assaulted his attorney and was resisting being handcuffed (SA-270 – SA-271; SA280; SA-351). As previously stated above, defendants took appropriate measures to regain peace, order, and security, to protect themselves and others, and to quell the assault on a civilian in the jail. The actions taken by defendants were objectively reasonable in light of the situation. The subject management techniques employed were *de minimus* and therefore insufficient to rise to the level of a constitutional violation. Accordingly, defendants are entitled to qualified immunity.

## <u>CONCLUSION</u>

Defendants respectfully request that this Court affirm the decision of the District Court, and grant them summary judgment dismissing the Amended Complaint in its entirety.

Dated:  January 31, 2023
     Buffalo, New York    **JEREMY C. TOTH**
                *Erie County Attorney*


                By: *Erin E. Molisani*
                Erin E. Molisani
                Assistant County Attorney
                95 Franklin Street, Room 1634
                Buffalo, New York 14202
                Telephone: (716) 858-2216
                Email: erin.molisani@erie.gov

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Rule 32(a) of the Federal Rules of Appellate Procedure, Erin E. Molisani, Assistant County Attorney to Michael A. Siragusa, Erie County Attorney, hereby certifies that according to the word count feature of the word processing program used to prepare this Reply Brief, the brief contains 6,515 words and complies with the typeface requirements and length limits of Rule 32(a)(5)-(7).

Dated:      January 31, 2023
            Buffalo, New York         **JEREMY C. TOTH**
                                       *Erie County Attorney*

                                      By: *Erin E. Molisani*
                                      Erin E. Molisani
                                      Assistant County Attorney
                                      95 Franklin Street, Room 1634
                                      Buffalo, New York 14202
                                      Telephone: (716) 858-2216
                                      Email: erin.molisani@erie.gov